. Pearsox, J.
 

 The plaintiff owned about 75 aeres'óf land, which adjoined the land of the "defendant, Littléy berry Earp, and on which she lived. She owned, besides her land, ten barrels of corn, and sorbe fodder, household and kitchen furniture, a few farming'tools, a "few hogs‘,'a, cow, .and some sheep. She was "indebted to bhe' Wo'otl, in the siuh of #18, and was surety-'for We" ’
 
 *168
 
 note to said Wood for $54, principal and interest; and, she owed to one Richardson a debt of $31 40. These debts were reduced to judgments and her property levied on. On the 13th of November 1845, she executed to said Littleberry Earp an absolute deed in fee simple for her land, and the consideration expressed is $31 40. On the 12th of November 1845, she executed to said Earp an absolute bill of sale, for the ten barrels of corn, fodder* hogs, cow, sheep, farming tools, and household furniture. The consideration expressed is $18. At the same time Ligón executed an absolute bill of sale to said Earp, for a horse, a plough, and a few other articles. The consideration expressed is $54, and thereupon the said Earp assumed the said three debts, which he afterwards paid. In the Fall of
 
 1846,
 
 the plaintiff paid to the defendant $27, and Ligón paid him the $54 and interest, and in the Spring of 1847, the plaintiff tendered to the defendant the balance of -the money, which he had advanced, together with the interest thereon, and desired a reconveyance of the land. The defendant refused to accept the money, and insisted that the land was his, absolutely; and after-wards commenced an action of ejectment, and the plaintiff filed this bill; in which she alleges, that to relieve her property from execution sale, she applied to Wyatt Earp, one of the defendants, to lend her the money, and to take her land, and other property as security, and, after some negotiation, the defendant, Littleberry, finally agreed to “befriend her,” by lending her the money, and taking deeds on the land, and other property as security, and also taking a deed from Ligón for his property, so as to relieve her from her own debts, and that for which she was bound as his security, these three debts being all she owed; and accordingly the deeds were executed, with a full assurance on the part of the defendant, Littleberry} that upon the repayment of the money, he would let her keep her property and reconvey the land; that she re»
 
 *169
 
 mainod in possession of the land and other property, and in 1846, by her small crop of cotton, was able to make a payment of g27, and Ligón paid off his debts, and in 1847, she procured the money to discharge the balance, 'when the defendant, in violation of his promise, and the assurance, that the deed was only to be a mortgage, set up an absolute claim to her land; that she is poor, and illiterate, and would have signed any paper on the assurance of Earp, in whom she had confidence, and who professed to be her friend. The prayer is to be allowed to redeem upon an account. The answers admit, that the bills of sale for the personal property, although absolute on their face, were intended merely as sureties for the repayment of the money, to wit: the Si8 paid for the plaintiff, and the
 
 $54,
 
 paid for Ligón, and that these bills of sale were accordingly cancelled, by writing “satisfied in full,” on the baek of them in the Fall of 1846. But it is positively denied, that the deed for the land was intended as a mortgage, or that the defendant gave any promise tor assurance to that effect. On the contrary both of the defendants swear, that the defendant, Littleberry, especially, refused to advance money for and on account of the land, as a security, although the plaintiff at first requested that he would do so, aud that finally an absolute sale of the land was agreed on for the sum of $31
 
 40,
 
 (the amount of the debt to Richardson.) which they aver tó be a full price, and an absolute deed was accordingly executed.
 

 The allegation of the bill is supported by the depositions of a daughter and son of the plaintiff, and the denial of the answer is supported by the deposition of the defendant, Wyatt Earp; and upon this point — the testimony in reference to declarations — there is, as near as may be,
 
 a balance,
 
 an equal weight on both sides. The deed must > stand, unless it can be converted into a mortgage, by
 
 facts dehors,
 
 inconsistent with the fact of an ábsolute sale.—
 
 *170
 
 We think there are such facts, which “kick the beam,” ajrd bring down the scale in favor of the plaintifF:
 

 1st. The value of the land is $100 — this is fully proven. The alleged price is $31 40. It is inconsistent with an absolute sale, that the price should be less than one third of the established value.
 

 2nd. Two witnesses. Wood and Richardson,both swear, that they, at different times, offered to give the plaintiff' $100 for the land, a short time before the date of the deed to the defendant, and
 
 she refused to sell ;
 
 they both swear that they have been ever since, and are still, willing to give $100 fcr the land. They were the only two creditors of the plaintiff’, and one of them, Richardson, was at her house on the 12th of November, and witnessed the bills of sale, and then received a promise from Wyatt Earp, that he would see his debt paid, viz,. $31 40, and on that occasion, the plaintiff'did not tell him she had concluded to sell her land. These
 
 facts
 
 are totally incon sistent with the fact, that she had at that time agreed to sell her land for $31 40, and to give a mortgage on all the other property she had in the world, to pay this and the other two debts.
 

 3rd. Under the same arrangement, by which she was to bp relieved from her debts, the plaintiff executed an absolute bill of sale for her corn, hogs, &c., and an absolute deed for her land. It is admitted that the bill of sale was intended as a mortgage. Then why is it absolute on its face? and how is it, that the defendant was willing to invest money upon the precarious security of corn, fodder, hogs, &c., and was not willing to do so upon permanent landed security? No: explanation is offered.— The inference is, that the plaintiff; believing that the defendant was disposed to “befriend her,” was willing to sign any paper, and, to induce this confidence, the defendant was willing to advance money upon the security of
 
 corn fodder, hogs,
 
 &c., as a “lure” or “bait,” whereby to get
 
 *171
 
 an absolute deed./or
 
 the land.
 
 But it is suggested, that the defendant frankly admits, that the bill of sale was a mortgage; true, but he gives no explanation why it was absolute on its face ; and the receipt of the $27 made it necessary to admit, that one of the conveyances was intended as a mortgage. A prudent mariner throws a part of his cargo over-board in a storm 1
 

 4th. The plaintiff held possession for the balance of the year 1845, during the year 1840, and until August 1S47,
 
 without paying rent. '
 
 It is not suggested that by the terms of sale, she was entitled to remain on the land
 
 rent free.
 
 This is inconsistent with the fact of an absolute sale, and can only be accounted for on the ground of a mortgage. The defendant was hardly so kind as to pay the full price (as he saj-s) with interest on the purchase money, and charge
 
 no rent.
 

 5th. The
 
 $27
 
 paid exceeded the sum for which the corn, &c, was bound $18, how was the excess $9, to be applied ? There was no positive proof of any other debt.
 

 6th. The price was $31 40 cts. Strange the value of the land should be that very sum. In sales we usually deal in round numbers, $30 or $35, or split the difference $37á,but$3l 40 bears the mark of a security and is .inconsistent with a sale.
 

 It must be declared to be the opinion of the Court, that the plaintiff has a right to redeem the land, set out in the bill, and there must a reference to take an account of the rent of the land, while in the possession of the defendant, and to ascertain the amount- due. As the plaintiff sues in
 
 forma pauperis,
 
 the parties pay their own costs.
 

 Per Curiam. Decree accordingly.