JANE CULBRETH v. M. M. HALL AND J. E. WILSON.

(Filed 16 October, 1912.)

1. Deeds and Conveyances—Fraud—Mortgages—Evidence—Nonsuit.
     In an action to convert a deed into a mortgage on the ground of fraud in its procurement, there was evidence tending to show that the plaintiff was an illiterate colored woman, working for the defendant as a "washerwoman"; that she had purchased the land in question with the understanding that the defendant would lend her the balance of the purchase price, to be secured by a mortgage thereon, and that the deed was written by a notary public, the defendant's son, who also probated it, and was signed by the plaintiff upon being misled to believe that it was the mortgage agreed upon; that the plaintiff remained in possession for twelve months without any demand for rent, and listed the lands for taxes and claimed it as her own: *Held,* a motion for a nonsuit was properly denied.

2. Deeds and Conveyances—Evidence Dehors—Fraud—Burden of Proof.
     In an action to convert a deed into a mortgage on the ground of fraud in its procurement: *Held,* in this case, the plaintiff's possession without demand upon her for rent, and the gross inadequacy of the price, were inconsistent with the defendant's claim of absolute ownership, and is evidence *dehors* the deed; if such evidence was required.

3. Pleadings—Lis Pendens—Notice.
     A complaint containing the names of the parties, the object of the action to set aside a deed to lands for fraud in its procurement, given when a mortgage to secure the balance of the purchase price of the lands should have been executed, and a description of the lands, is a *lis pendens,* and is notice to a subsequent purchaser without the necessity of filing a separate and formal notice.

4. Justices of the Peace—Title to Lands—Jurisdiction—Judgment—
Superior Court—Estoppel.

A judgment of a justice of the peace in a summary action of
ejectment wherein the title to the lands is controverted by the
answer does not estop the plaintiff, in his action theretofore
brought in the Superior Court, to convert the deed to the lands
in question into a mortgage on the ground of fraud. The pro-
ceedings before the justice are void upon their face, in view of
the title therein set up by the defendant, and in the absence of
any adjudication of tenancy by the justice; and the judgment
of the Superior Court, having assumed jurisdiction over the
whole subject-matter, is final.

5. Landlord and Tenant — Mortgagor in Possession — Demand —
Ejectment—Justice's Court—Jurisdiction.

The landlord and tenant act does not apply to a mortgagor
who is allowed to remain in possession, and on demand, after
default, refuses to surrender possession; and its provisions can-
not be extended by any contrivance so as to give to the mort-
gagee the benefit of summary proceedings in ejectment, in a court
of a justice of the peace.

6. Deeds and Conveyances—Fraud—Mortgages—Liens—Rents and
Profits—Measure of Damages.

The plaintiff being successful in her action to convert a deed
into a mortgage to secure a loan for the purchase of land,
wherein the right of redemption is found to exist, is entitled to
recover the entire estate in the property, subjct to the amount
of the lien and interest, upon which amount the rents and profits
for the period of her wrongful "ouster" are to be credited.

APPEAL by defendant from *Carter, J.,* at July Term; 1912,
of SAMPSON.

Civil action. These issues were submitted:

1. Was Jane Culbreth induced to sign the deed to M. M.
Hall, instead of a mortgage, by the fraud of defendant M. M.
Hall, as alleged in the complaint? Answer: Yes.

2. What amount did defendant Hall pay Melvin at the time
the deed was executed by Melvin to the plaintiff, Jane Cul-
breth? Answer: $319.

3. Did the defendant Wilson have legal notice of plaintiff's
cause of action, by her complaint on file as a *lis pendens,* prior
to the registration of his said deed for said lands? Answer:
Yes.

4. Is plaintiff estopped by the proceedings and judgment of
R. H. Hubbard, J. P.? Answer: No.

5. What damages has plaintiff sustained by reason of the
defendant Hall failing to permit the plaintiff to redeem said
land and wrongfully conveying same to his codefendant, Wilson? Answer: $361.17.

From the judgment rendered the defendants appealed.

*George E. Butler for plaintiff.*
*Faison & Wright for defendants.*

BROWN, J. This action is brought to convert a deed into a
mortgage, upon the ground of fraud, the plaintiff averring that
she was induced by the fraud of the draftsman to sign the instrument, thinking it was a mortgage, instead of an absolute
deed.

We have examined the eighteen assignments of error, and find
nothing in the record that justifies us in directing another
trial.

1. It is contended that his Honor should have sustained the
motion to nonsuit.

The plaintiff's evidence tends to prove that she purchased a
dwelling-house and lot from one Melvin and owed him a balance
of $319 on it; that the property was worth about $700; that
she applied to defendant Hall for a loan of $319; that after
some "chaffering," defendant agreed to lend plaintiff $319 on
two years credit at interest, and that Hall paid said sum to
Melvin for her, and Melvin executed a deed to plaintiff.

The deed from plaintiff to Hall was written by his son,
James Hall, a notary public, who also probated it. The plaintiff testifies positively that the transaction was a loan and not a
sale, and that the notary fraudulently substituted an absolute
deed for a mortgage. There is abundant evidence to support
the plaintiff's own testimony.

It is in evidence that she is an illiterate, ignorant colored
woman of excellent character, and the "washerwoman" for
Hall's family; that she had purchased the property from Melvin
and made payments on it; that the exact sum she obtained
from Hall was the sum she owed Melvin; that Hall agreed to

lend it to her for two years; that plaintiff remained in possession for twelve months, without any demand for rent; that she listed the property for taxes, and claimed it as her own. The motion to nonsuit was properly denied.

2. It is contended his Honor erred in not charging the jury that there must be evidence *"dehors* the deed" before it can be set aside. His Honor charged the jury that the plaintiff must sustain her allegations not only by the greater weight of evidence, but by evidence clear, strong, cogent, and convincing.

The theory upon which this case was tried was that the defendant Hall fraudulently and falsely substituted an absolute deed for a mortgage, and took advantage of plaintiff's ignorance.

The gravamen of the action is a pure fraud and not mutual mistake. In view of this, it may be open to doubt as to whether his Honor did not err on the side of the defendants as to the *quantum* of proof.

In *Harding v. Long,* 103 N. C., 1, the subject is elaborately discussed by *Justice Avery,* and it is held that where it is sought to have a deed declared void because its execution was obtained by false and fraudulent representations of the grantee, the degree of proof, as stated by his Honor in the case at bar, is not required.

We think his Honor's charge under the facts of this case is not justly open to exception by the defendants. *Cobb v. Edwards,* 117 N. C., 245; *Avery v. Stewart,* 136 N. C., 426; *Ely v. Early,* 94 N. C., 1; *Wilson v. Land Co.,* 77 N. C., 447.

Besides, there are facts in evidence *dehors* the deed, and inconsistent with the claim of absolute ownership upon the part of Hall, such as gross inadequacy of price, possession retained by plaintiff and no demand for rent. *Kelly v. Bryan,* 41 N. C., 287.

3. It is contended that his Honor erred in holding that the defendant Wilson had legal notice of the plaintiff's equity. His Honor correctly directed the jury upon the record evidence to answer the third issue "Yes." The summons was issued and a duly verified complaint filed on 13 January, 1911. The deed from Hall to Wilson was not probated or registered, nor is there any proof of its delivery until 16 January, 1911.

The complaint has all the requisites of a *lis pendens,* and contains the names of the parties, the object of the action, and a description of the land to be affected. It was, therefore, unnecessary to file a separate and formal notice. *Arrington v. Arrington,* 114 N. C., 151; *Collingwood v. Brown,* 106 N. C., 362.

4. It is contended further that a summary proceeding in ejectment before a justice of the peace operates as an estoppel and precludes the plaintiff from prosecuting this, action. The record shows that the proceeding aforesaid was commenced on 20 February, 1911, and this action was commenced and the complaint filed on 13 January, 1911.

In the. summary proceeding the defendant, Jane Culbreth, pleaded that the justice of the peace had no jurisdiction, for that the title to real estate is brought into controversy, and she set out in her answer the pendency of this suit in the Superior Court of Sampson County, averring all of the several facts which are alleged in her complaint in this action.

There is no evidence that she ever attorned to Hall and no claim by Wilson that she ever attorned to him. On the contrary, she stoutly denied any tenancy, but averred that she went into possession as a purchaser from Melvin and has never surrendered that possession to any one.

It is to be observed that the justice of the peace did not find it a fact that Jane was a tenant of either Hall or Wilson, but, without any such adjudication, simply ordered that she be removed from the premises.

It is contended by the counsel for the plaintiff that this summary proceeding was a part of the fraudulent scheme to "oust" the plaintiff from her property, and there is color for such allegation; but in our view the whole proceeding was void on its face, in view of the plea of title set up by the defendant in the said proceeding, and in the absence of any adjudication of tenancy by the justice of the peace. It appears from that record that the justice did not pass on that question, but simply directed the removal of Jane from her property.

The Superior Court had prior to this assumed jurisdiction over the whole subject-matter, as well as over the persons interested, and its judgment is necessarily final.

In speaking of estoppel arising from the possession of landlord and tenant, *Mr. Justice Hoke* says: "It is incident to the tenure and the enjoyment of the right, after the relationship has ended and the enjoyment has ceased in the one .case, or the possession has been surrendered in the· other, the question is then at large, and it is open to the tenant to show the truth of the matter." 144 N. C., 514.

It is settled that the landlord and tenant act does not apply to a mortgagor who is allowed to remain in possession, and, on demand after default, refuses to surrender possession; and the provisions of that act cannot be extended by any contrivance so as to give to the mortgagee the benefit of having summary proceedings. *Greer v. Wilbar,* 72 N. C., 593; *McCombs v. Wallace,* 66 N. C., 481.

5. There are some exceptions relating to the fifth issue in respect to the measure of damage which it is not necessary to consider. We think his Honor applied the proper rule of damage in the event that the plaintiff had lost her equity of redemption by the fraudulent conduct of Hall; but that is not the case, for she has recovered her entire estate in the property as against both of these defendants, subject to the lien of $319 and interest. Therefore, she is not entitled to recover the value of her equity of redemption as assessed under the fifth issue; but she is entitled to recover of these defendants the rents of the property from the date when she was "ousted" up to the time when it shall be restored to her, together with such other actual damages as she may have sustained by reason of her wrongful "ouster," which sum will be credited upon the $319.

At the next term of the Superior Court the presiding judge will submit an issue in order that such damages and rents may be ascertained.

The judgment of the Superior Court is modified and affirmed.

The costs will be taxed against the defendants.

Affirmed.