ROBERT HARDY AND LOLA M. HARDY v. J. P. NEVILLE AND CARRIE W. NEVILLE AND LONSO W. LOCK.

(Filed 18 March 1964.)

**1. Mortgages and Deeds of Trust § 1—**

A deed and contract by the grantee to reconvey will be declared an equitable mortgage if it is the intent of the parties at the time to secure the payment of a debt and the relationship of debtor and creditor continues to exist after the execution of the instruments, and factors to be considered in determining the question are the financial distress of the grantor at the time of the execution of the instruments, whether he is permitted to remain in ·possession, and whether the agreement to reconvey is for the amount of the debt plus taxes and interest.

**2. Same—**

> Where it appears from the pleadings that plaintiffs were indebted in a specified sum and executed a deed to defendants and, contemporaneously therewith, defendants by written contract agreed to reconvey the land upon payment in ten annual installments of the exact amount plaintiffs were indebted, plus interest and taxes, and that plaintiffs were unable to meet the first payment and the parties entered into a second contract extending the time for payment in order to give the plaintiffs additional opportunity "to redeem" the land, plaintiffs are entitled to judgment on the pleadings that the instruments constitute an equitable mortgage.

**3. Mortgages and Deeds of Trust §§ 13, 39—**

> Where a deed and contracts constitute an equitable mortgage, neither the equitable mortgagee nor the equitable mortgagor alone may convey a clear title, and, the instruments being recorded, a grantee solely from the equitable mortgagee takes with notice and is in no better position than the equitable mortgagee, and is properly made a party to the action to have the transaction declared a mortgage.

PARKER, J., did not take part in the disposition of this case.

APPEAL by plaintiffs from *Parker, J.,* September-October, 1963 Civil Session, HALIFAX Superior Court.

The plaintiffs instituted this civil action to have the court declare that the documents (a deed and two contracts) executed between the plaintiffs and J. P. Neville and wife established a mortgagor-mortgagee relationship between them; and that the grantees be required to accept payment of the amount due and cancel the deed.

The defendants, by answer, denied the mortgagor-mortgagee relationship, contending the transactions consisted of a fee simple conveyance and an option to repurchase which the plaintiffs failed to exercise; that the described lands were sold to the defendant Lock, who is now the owner; and that the amount due the plaintiffs from the sale in excess of the debt has been deposited for them in the office of the Clerk Superior Court.

Demurrers to the complaint and to the further defenses and motion by the plaintiffs for judgment on the pleadings were filed. The parties, by stipulation, waived a jury trial and "agreed that the court might find the facts, apply the law and render judgment thereon."

At the conclusion of the hearing, the court, without any findings of fact, or without stating any conclusions of law, ordered and decreed "that the plaintiffs be and they are hereby nonsuited and that said cause be and it is hereby dismissed."

The plaintiffs excepted and appealed.

*Samuel S. Mitchell, R. Conrad Boddie, Theaoseus T. Clayton, Earl Whitted, Jr., for plaintiff appellants.*

*Branch & Hux, by George A. Hux; Rom B. Parker for defendant appellees.*

HIGGINS, J.   The plaintiffs moved for judgment on the pleadings, contending the allegations and admissions in the defendants' answer show conclusively that the deed executed by the plaintiffs to J. P. Neville and wife on February 2, 1961, was in fact security for a debt and in equity a mortgage. The defendants alleged that prior to January 1, 1961, the plaintiffs were heavily indebted and threatened with the foreclosure of two deeds of trust on their farm. The plaintiffs applied to defendants J. P. Neville and wife for financial help. At the time the plaintiff's indebtedness, which is itemized in the answer, amounted to $8,736.70. We quote here two paragraphs from the defendants' answer:

> "2.   That pursuant to the conversation between the plaintiffs and the defendant, J. P. Neville, as set out in the preceding paragraph and after extensive discussion and negotiations the defendants, J. P. Neville and his wife, Carrie W. Neville, entered into an agreement on the 2nd day of February, 1961, with Robert Hardy and his wife, Lola M. Hardy, whereby the said Robert Hardy and his wife, Lola M. Hardy, executed a Deed to J. P. Neville and his wife, Carrie W. Neville; which deed is of record in Book 658, at page 99, Halifax County Public Registry.
>
> "3.   That contemporaneous with the execution of the said deed referred to in the preceding paragraph J. P. Neville and his wife, Carrie W. Neville, entered into a contract in the nature of an option with the said Robert Hardy and his wife, Lola M. Hardy, by the terms of which said J. P. Neville and his wife, Carrie W. Neville, agreed to sell and reconvey the real estate described in said deed for the purchase price of $8,736.70, plus interest at the rate of six per cent per annum, plus all taxes paid by the said J. P. Neville and wife, Carrie W. Neville, on said real estate and all premiums of insurance advanced by J. P. Neville and his wife, Carrie W. Neville."

The defendants treat the first contract as in the nature of an option to repurchase. The document is before us. It is a contract of purchase and sale on fixed terms; that is, the payment of the debt, interest, insurance, and taxes in ten annual installments and upon the final payment it binds the Nevilles, their heirs and personal representatives to execute and deliver to the Hardys "or their nominee a deed in fee simple for said land." This contract executed with the deed has the effect of inserting the conditions as a defeasance clause in the deed. .

The plaintiffs were unable to meet the first payment due under the contract of February 2, 1961, and according to the defendants' answer, ". . . J. P. Neville advised Robert Hardy . . . that he did not wish to be forced to take possession of the farm . . . and after extended negotiations . . . J. P. Neville and wife . . . entered into another written contract . . . *extending the time for payment in order to give the plaintiffs additional opportunity to redeem the real estate referred to in this cause.*" (emphasis added.)

The second contract, dated January 1, 1962, was attached to and made a part of the defendants' answer. It provided that in the event the plaintiffs were unable to obtain adequate financing to operate the farm, or if "they were unable to meet the payment of principal, interest, insurance and taxes (due on December 30, 1962) then, and in that event the farm shall be sold. . . . In the event the said parties are unable to agree among themselves then said farm shall be sold at public auction to the highest bidder, after two weeks advertisement in the Enfield Progress, and any amount that it brings over and above the purchase price of $8,736.70, plus all accrued interest, and plus taxes and insurance as of the date of the sale, shall be divided equally . . . J. P. Neville, et ux, receiving one-half, and Robert Hardy, et ux, receiving one-half."

The plaintiffs' motion for judgment on the pleadings required the court to determine as a matter of law whether the deed and contract of February 2, 1961, and the followup contract of January 1, 1962, together with the other admissions in the answer, established the relationship of the parties as debtors and creditors and fixed the deed as in equity a mortgage to secure the debt.

Our cases furnish ample guides pointing to the right answer. "If the relation of debtor and creditor still continues, equity will regard the transaction as a method of securing a debt—and hence a mortgage." *Ricks v. Batchelor,* 225 N.C. 8, 33 S.E. 2d 68. A material question also is: does the relationship of debtor and creditor continue to exist after the conveyance? *Ferguson v. Blanchard,* 220 N.C. 1, 16 S.E. 2d 414. If the intent is to secure an obligation at the inception of the transaction it will be considered in equity a mortgage, and nothing else. *McKinley v. Hinnant,* 242 N.C. 444, 87 S.E. 2d 568.

Other questions material to decision in favor of holding a deed a mortgage are: The grantor is in distress at the time of the transaction. *O'Briant v. Lee,* 214 N.C. 723, 200 S.E. 865. The grantor is permitted to remain in possession. *Culbreth v. Hall,* 159 N.C. 588, 75 S.E. 1096. The price for reconveyance was not the value of the land but exactly the amount the grantees had advanced, plus interest, insurance and taxes. *Kemp v. Earp,* 42 N.C. 167.

The defendants' answer shows (1) the consideration for the deed was exactly the amount paid in discharge of the plaintiffs' debts; (2) the contract price for repurchase was the exact amount of that indebtedness, plus interest, insurance and taxes; (3) *the second contract was for the purpose of giving the plaintiffs additional time to redeem;* (4) in case of further default, provision was made for a sale, private by agreement, public otherwise; and the satisfaction of the debt from the proceeds. Thus the defendants' pleading makes out a clear case of debtor-creditor relationship between the Hardys and the Nevilles. The Nevilles held the legal title as security for their debt. The Hardys owned the equity of redemption. Both together, but neither alone, could sell and convey a good title to the purchaser.

Mr. Lock, who appears to have purchased at a sale made presumably by the Nevilles since they executed the deed to him, nevertheless was charged with notice of the lack of their authority to sell at public auction. The deed and the contracts were known to him because of registration and the reference to them in his deed from the Nevilles. However, he does not claim to be in any better position than they are. He joins with them in the answer and in the brief here. The Hardys were not parties to his deed. "All persons having an interest in the equity of redemption should be made parties to a bill of foreclosure." *Jones v. Williams,* 155 N.C. 179, 71 S.E. 222.

The court did not pass on plaintiffs' motion for judgment on the pleadings. The question is presented here by plaintiffs' Assignment of Error No. 6. The court should have ruled as a matter of law the plaintiffs and J. P. Neville and wife occupied the relationship of debtors and creditors, and the deed dated February 2, 1961, was in equity a mortgage conveying the lands to the grantees as security for the indebtedness due by the grantors. Subject to this indebtedness, Robert Hardy and wife, being the owners of the equity of redemption, are entitled to have the deed cancelled upon the payment of that indebtedness. If the indebtedness is not paid, J. P. Neville and wife may apply to the court for foreclosure. This is an equity proceeding. The court has ample power to require an accounting and to make such other orders as may be necessary to protect the interests of all parties.

The judgment of nonsuit is reversed and the cause is remanded for disposition in accordance with this opinion.

Reversed.

PARKER, J., did not take part in the disposition of this case.