762 F.2d 1181
 Mable A. REDIC, Appellee,
v.
GARY H. WATTS REALTY CO., and David S. Schwartz, Appellants,
and
Shirley E. Schwartz, Defendant.
Mable A. REDIC, Appellee,
v.
GARY H. WATTS REALTY CO.; David S. Schwartz, Appellants,
and
Shirley E. Schwartz, Defendant.
 Nos. 84-1393(L), 84-1523.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 8, 1985.
Decided May 9, 1985.
Rehearing and Rehearing In Banc Denied June 5, 1985.
 
 Ralph C. Clontz, Jr., Charlotte, N.C. (Clontz & Clontz, Charlotte, N.C., on brief), for appellants.
 Louis L. Lesesne, Jr., Charlotte, N.C. (Gillespie & Lesesne, Charlotte, N.C., on brief), for appellee.
 Before RUSSELL and CHAPMAN, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.
 CHAPMAN, Circuit Judge:
 
 
 1
 This appeal arises out of a real estate transaction between plaintiff-appellee, Mable A. Redic, and defendants-appellants, Gary H. Watts Realty Company, a corporation, and David S. Schwartz, a sole proprietor. The defendants appeal from the judgment of the district court, entered after a jury verdict, awarding Redic damages against Schwartz under both the Truth in Lending Act, 15 U.S.C. Sec. 1601 et seq. (1982), and North Carolina's usury statute, N.C.Gen.Stat. Sec. 24-2 (1965), ordering the defendants to reconvey the property to her, and awarding Redic her counsel fees and costs, 586 F.Supp. 699. We conclude that the district court erred in denying Schwartz' motion for a directed verdict as to Redic's Truth in Lending claim because the evidence conclusively showed that Schwartz was not a "creditor" within the meaning of the Act. Accordingly, we reverse that portion of the district court's decision awarding Redic relief under the Truth in Lending Act but affirm that portion of the decision awarding her damages against Schwartz under North Carolina's usury statute.
 
 
 2
 * Redic purchased her home in 1974 from the Department of Housing and Urban Development. Lomas & Nettleton Company, a mortgage loan company located in Virginia, held a deed of trust which secured a FHA loan. Due to a series of financial difficulties in 1981, Redic went into default on her monthly mortgage payments and, in December 1981, Lomas & Nettleton initiated a foreclosure action.
 
 
 3
 In an effort to save her home, Redic inquired of a number of potential lenders about obtaining a loan in order to bring her mortgage account current. Redic was at that time a participant in a Chapter 13 wage earner plan in the bankruptcy court. While Redic was seeking a loan at traditional lending institutions, several real estate investors made unsolicited offers to purchase her equity in the home. One of these investors was David Schwartz. On December 23, 1981, Redic, Schwartz, and Watts Realty Company entered into the transaction which is the subject of this action.
 
 
 4
 The parties disagree over the nature of the transaction. According to the defendants, Schwartz and Watts Realty Company purchased Redic's equity in her home for $17,100, leased it back to her for a year, and gave her an option to repurchase it at any time within a year for the sale price plus a realtor's commission of 3.5 percent. Schwartz denied that he had discussed making a loan to her and insisted that he had only discussed purchasing her home. Redic claims that Schwartz offered to lend her the necessary funds to bring her mortgage current and to allow her one year in which to repay the amount lent. Redic insists that despite the parties' intention, the closing documents prepared by the defendants consisted of a general warranty deed, a lease, and an option to repurchase. Redic contends that the transaction was a loan with a security interest, rather than a sale with an option to repurchase, notwithstanding the form of the documents.
 
 
 5
 Redic was unable to repay or repurchase at the conclusion of the one year period and Schwartz refused to extend the time. Redic then gave the defendants notice that she was rescinding the transaction pursuant to Sec. 125 of the Truth in Lending Act, 15 U.S.C. Sec. 1635(a). The defendants did not respond to Redic's notice of rescission.
 
 
 6
 Redic then filed this action in the district court under the Truth in Lending Act. Redic alleged that the transaction in question was a loan with a security interest, rather than a sale with an option to repurchase, and that the defendants had failed to comply with the disclosure requirements contained in the Truth in Lending Act. Redic also asserted a pendent claim under North Carolina law, claiming that the defendants had charged her usurious interest in violation of N.C.Gen.Stat. Sec. 24-2 (1965). Accordingly, Redic sought (1) a civil penalty of $1,000 plus costs and attorney's fees, (2) rescission of the transaction under the Truth in Lending Act and Revised Regulation Z and a refund of any finance and other charges paid, and (3) damages under North Carolina's usury statute. Redic alleged jurisdiction under Sec. 130 of the Act, 15 U.S.C. Sec. 1640(e).
 
 
 7
 The defendants denied that the transaction in question was a credit transaction or that they were "creditors" under the Act. The defendants insisted that they were not "creditors" within the meaning of the Act because they had not "regularly" extended consumer credit. The defendants acknowledged, however, that they made no disclosures under the Act and that they had not rescinded the transaction.
 
 
 8
 During 1981 Schwartz entered into twelve similar transactions with other homeowners. Each transaction followed a similar format as that followed in Redic's case: execution of a warranty deed with a lease and an option to repurchase at the end of the so-called lease. At trial Redic contended that these other transactions also represented extensions of credit, and that Schwartz was therefore a "creditor" within the meaning of the Act.
 
 
 9
 In each of the other twelve transactions Schwartz approached the putative grantor after learning that the grantor was facing foreclosure proceedings on his home. Each lease agreement required the putative grantor/tenant to maintain the interior and exterior of the premises. In each transaction the homeowner was allowed to continue in possession of the premises and was given an option to repurchase at the end of the lease. Although Schwartz entered into twelve similar transactions during 1981, Watts Realty Company was a party to only one of those transactions.
 
 
 10
 Both sides moved for summary judgment. In support of their motion for summary judgment, the defendants submitted the unrefuted affidavits of the grantors in eight of the twelve relevant transactions. In these affidavits each grantor swore that he (1) sold his home to Schwartz, (2) rented his home from Schwartz (for varying terms with some leases renewed), (3) received an option to repurchase which he was not obligated to exercise and had cancelled, (4) never requested or received a loan from either defendant, and (5) knew that he had absolutely sold his property to Schwartz. Redic's evidence opposing the defendants' motion for summary judgment consisted of affidavits and a deposition from parties involved in only four of the twelve relevant transactions. She also filed her counsel's affidavit to introduce some of the documents executed by the parties to the other eight transactions, which evidence corroborated the affiants' testimony. The district court denied both motions for summary judgment.
 
 
 11
 The case was tried before a jury. At the conclusion of the evidence, the district court granted Watts Realty Company's motion for directed verdict with respect to Redic's claim under the Truth in Lending Act because there was insufficient evidence of its status as a "creditor" under the Act. Redic's pendent claim against Watts Realty Company under state law was submitted to the jury. The district court denied Schwartz' motion for directed verdict.
 
 
 12
 The jury's verdict awarded Redic damages against Schwartz in the amount of $2,944, representing $1,944 in damages for charging usurious interest and $1,000 as a statutory penalty under the Truth in Lending Act. The district court's judgment also ordered the defendants, including Shirley E. Schwartz, to execute and deliver to Redic a warranty deed conveying to her the property in question, subject to: (1) Redic's repayment of the $3,000 loan made by the defendants, (2) her reimbursement to the defendants for payments made to the mortgage company during the pendency of the action, and (3) her reassuming the existing FHA deed of trust. Also, the district court ordered Schwartz to pay Redic's attorney's fees and costs in the amount of $31,382.53. This appeal followed.
 
 II
 
 13
 * In general, the Truth in Lending Act requires a "creditor" to disclose certain credit terms to a borrowing consumer, including the amount of a finance charge and the annual percentage rate. 15 U.S.C. Sec. 1631(a) (1982); 12 C.F.R. Secs. 226.17 and 226.18 (1984). Failure to make the requisite disclosures can subject the creditor to civil liability in an amount equal to double the finance charge paid in connection with the transaction, but in no event less than $100 or more than $1,000. 15 U.S.C. Sec. 1640(a)(2)(A).
 
 
 14
 The Truth in Lending Act imposes additional duties on a creditor, and different debtor rights come into play, if the creditor retains or acquires a security interest, as part of a credit transaction, in any real property "which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. Sec. 1635(a). The Act gives the debtor a right of rescission which normally must be exercised within three days of the consummation of the transaction, and the creditor must provide the debtor with written notice of this limited right to rescind in addition to making all of the other usual disclosures required with any extension of credit. Id. When the creditor fails to disclose any item of the requisite information, the Act provides that the debtor's right to rescind is not limited by the normal three day period but continues until all the disclosures are made. 15 U.S.C. Sec. 1635(f).
 
 
 15
 It is undisputed that the defendants failed to give Redic the disclosures required by the Act. Nor is there any dispute that Redic notified the defendants of her intent to rescind the transaction. Rather, the defendants contend that the transaction was not governed by the Act, and thus not subject to the Act's civil penalties and right of rescission, because they were not "creditors" within the meaning of the Act.
 
 
 16
 Only "creditors" are subject to the Act's civil penalties. See 15 U.S.C. Sec. 1640(a). The Act defines the term "creditor," in part, as a "person who ... regularly extends ... consumer credit." 15 U.S.C. Sec. 1602(f). In addition, Revised Regulation Z provides that the Act and that regulation apply only to individuals or businesses that offer or extend consumer credit when "the offering or extension of credit is done regularly." 12 C.F.R. Sec. 226.1(c)(1)(ii). A footnote to Sec. 226.1(c)(1)(ii) refers to the definition of "creditor" for the meaning of the term "regularly." Revised Regulation Z Sec. 226.2(a)(17)(i) defines "creditor" to include a person who "regularly extends consumer credit," while footnote 3 to that section explains the quoted expression as follows:
 
 
 17
 A person regularly extends consumer credit only if it extended credit more than 25 times (or more than 5 times for transactions secured by a dwelling ) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year. (emphasis added).
 
 
 18
 Since Redic did not allege that Schwartz had extended consumer credit other than secured by a dwelling, Schwartz would be a "creditor" within the meaning of the Act only if he extended consumer credit secured by a dwelling at least five times in the preceding or current year prior to the Redic transaction; that is, in the period from January 1, 1980 until December 23, 1981 (the date of the Redic transaction).
 
 
 19
 In her amended complaint Redic claimed the right to rescind the transaction under the Act, 15 U.S.C. Sec. 1635(a), as implemented by Revised Regulation Z, 12 C.F.R. Sec. 226.23, because the defendants had acquired a "security interest" in real property used as her principal dwelling. This claim required the application of North Carolina law because Revised Regulation Z, 12 C.F.R. Sec. 226.2(a)(25), defines a "security interest" as an interest securing performance that is recognized by state law. Thus, whether Schwartz was a "creditor" within the meaning of the Act turns on whether at least five of the other twelve similar transactions were loans with security interests rather than sales with options to repurchase.
 
 B
 
 20
 Under North Carolina law, the test for determining whether a conveyance with an option to repurchase represents a true sale or merely a loan with a security interest focuses on the intent of the parties and not the form of the transaction. O'Briant v. Lee, 214 N.C. 723, 200 S.E. 865 (1939); McKinley v. Hinnant, 242 N.C. 245, 87 S.E.2d 568 (1955). In ascertaining the real intention of the parties, however, the simple declaration of the plaintiff, who was grantor in the deed, will not suffice to show that the parties intended to create a mortgage. The North Carolina Supreme Court has stated:
 
 
 21
 The intention [to create a mortgage] must be established, not by simple declaration of the parties, but by proof of the facts and circumstances dehors the deed, inconsistent with the idea of an absolute purchase; otherwise, solemnity of deeds would always be exposed to the slippery memory of witnesses.
 
 
 22
 O'Briant v. Lee, 214 N.C. at 731, 200 S.E. at 870 (quoting Watkins v. Williams, 123 N.C. 170, 31 S.E. 388 (1898) ). Thus, although a plaintiff may repeatedly testify that the transaction was intended to be a loan and that the land was conveyed for the sole purpose of securing the payment of that loan, the plaintiff must present more than his own simple declaration. Instead, the plaintiff must present proof of facts and circumstances dehors the deed inconsistent with the idea of an absolute purchase.
 
 
 23
 The North Carolina Supreme Court has identified six factors as pertinent in determining whether a transaction is a sale or a loan: (1) whether there was a debtor-creditor relationship created at the time of the transaction, Hardy v. Neville, 261 N.C. 454, 457, 135 S.E.2d 48, 51 (1964); (2) whether the "grantor" remains in possession or whether the grantee takes immediate possession of the property, id. at 457, 135 S.E.2d at 51; (3) whether the "grantor" was under distress and hard-pressed for money at the time of the transaction, O'Briant v. Lee, supra; Hardy v. Neville, 261 N.C. at 457, 135 S.E.2d at 51; (4) whether the transaction originated out of an application for a loan, O'Briant v. Lee, 214 N.C. at 733, 200 S.E. at 871; (5) whether the purported sale price is less than the net worth of the property, id. at 733, 200 S.E. at 871; and (6) whether the "grantor" was obligated to exercise the "option to repurchase." Hodges v. Hodges, 37 N.C.App. 459, 246 S.E.2d 812 (1978). The North Carolina Supreme Court has counseled that doubts about whether the transaction is a sale or a mortgage are to be construed in favor of a mortgage in order to prevent the possibility of oppression created by an outright sale. O'Briant v. Lee, 214 N.C. at 732, 200 S.E. at 869; McKinley v. Hinnant, 242 N.C. at 252, 87 S.E.2d at 573.
 
 C
 
 24
 The first issue presented is whether Schwartz was a "creditor" within the meaning of the Act.[1] As described above, this issue turns on whether he extended consumer credit secured by a dwelling at least five times in the preceding or current year prior to the Redic transaction, i.e., in the period from January 1, 1980, until December 23, 1981. 12 C.F.R. Sec. 226.2(a)(17)(i) n. 3. This issue, in turn, depends upon whether five of the previous twelve similar transactions involving Schwartz and Watts Realty Company were, in reality, loans with security interests and not sales with options to repurchase.
 
 
 25
 At trial Redic introduced direct evidence of intent from only four of the grantors involved in the twelve similar transactions with Schwartz.[2] The defendants, however, introduced unrefuted affidavits regarding intent from each of the remaining grantors. Each of these latter grantors swore that he had sold his home to Schwartz, had never requested or received a loan from either defendant, and knew that he absolutely sold his property to Schwartz. Several of these grantors later testified at trial on behalf of the defendants. We do not think a jury is free to recharacterize another transaction not the subject of the suit as a loan with a security interest, rather than a sale with an option to repurchase, when the transaction is evidenced by a general warranty deed absolute on its face and both parties to the transaction give unrefuted testimony that the transaction was a sale with an option to repurchase. To allow a jury to recharacterize such a transaction as a loan with a security interest would be contrary to the North Carolina Supreme Court's command that the true nature of a transaction depends upon the intention of the parties.
 
 
 26
 The only reasonable inference that could be drawn from the evidence was that Schwartz was not a "creditor" within the meaning of the Act because the evidence conclusively showed that he had not engaged in the requisite number of real estate transactions to be classified as one who "regularly extends ... consumer credit." 15 U.S.C. Sec. 1602(f); 12 C.F.R. Secs. 226.1(c)(1)(ii) and 226.2(a)(17)(i) n. 3. Thus, the district court erred in denying Schwartz' motion for directed verdict. Accordingly, we reverse that portion of the district court's decision which awarded Redic relief under the Truth in Lending Act.
 
 III
 
 27
 The second issue concerns Redic's pendent claim under North Carolina usury statute, N.C.Gen.Stat. Sec. 24-2 (1965). The jury awarded Redic $1,944 in damages against Schwartz for charging her usurious interest. In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that if a federal claim against a party is dismissed before trial, the pendent state law claims should be dismissed as well. The Ninth Circuit has held, however, that once a trial is held a court of appeals should order dismissal of a pendent claim on remand only "when the federal cause of action was so insubstantial and devoid of merit that there was no federal jurisdiction to hear it." Traver v. Meshriy, 627 F.2d 934, 939 (9th Cir.1980) (citing Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1973) ). It also stated that if the federal claim was not frivolous, then the issue of whether the district court should have heard the pendent state claim is a matter committed to the sound discretion of the district court. Traver, 627 F.2d at 939.
 
 
 28
 We conclude that Redic's Truth in Lending claim was not frivolous and that the district court did not abuse its discretion in hearing Redic's pendent North Carolina claim for usury. Therefore, we affirm that portion of the district court's decision awarding her $1,944 in damages against Schwartz for charging her usurious interest. The award of counsel fees was made under the Truth in Lending Act and since recovery under that cause of action has been reversed, the award of counsel fees is also reversed.
 
 
 29
 REVERSED IN PART,
 
 
 30
 AFFIRMED IN PART.
 
 
 
 [1]
 The defendants also argue that the district court's judgment should be reversed because the transaction in question was a sale with an option to repurchase, rather than a loan with a security interest, as a matter of law. In support of this argument the defendants rely on their testimony, Redic's failure to claim a mortgage interest deduction on her income tax return filed after this suit, and the inscription "for rent" placed on all twelve rent payments. We decline to review this contention, however, because the defendant's Rule 50 motions failed to raise any question about the sufficiency of the evidence regarding Redic's claim that the transaction in question was a loan with a security interest. Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1058 (4th Cir.1976), cert. denied, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). In fact, in one motion defendants' counsel explicitly disclaimed any contention of insufficiency on that question
 
 
 [2]
 In her motion for summary judgment Redic submitted the affidavit of James Gillespie. In his affidavit Gillespie stated that his transaction with Schwartz was a loan with a security interest and not a sale with an option to repurchase. At trial, however, Gillespie recanted his prior statement and testified that his transaction was, in reality, a sale with an option to repurchase. But even including Gillespie, Redic introduced direct evidence of intent from only four of the other twelve grantors