Judges WHICHARD and EAGLES concur.

EAGLE'S NEST, INC. v. ROBERT C. MALT

No. 8328SC1135

(Filed 18 September 1984)

**Mortgages and Deeds of Trust § 1.1— no obligation to redeem property—no equitable mortgage**

    In an action for a declaratory judgment to convert a deed previously executed to defendant into an equitable mortgage or deed to secure a debt, defendant was properly entitled to summary judgment where the materials before the court indicated that there were no redemption rights for the property in question other than an option to repurchase; plaintiff gave notice of its intent to exercise its option to repurchase but failed to do so; and the record indicated no obligation on the part of plaintiff to pay anything to defendant.

APPEAL by plaintiff from *Howell, Judge.* Judgment entered 10 August 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 24 August 1984.

Plaintiff, a Florida corporation, instituted this suit for declaratory judgment seeking to convert a deed previously executed to defendant, Robert C. Malt, into an equitable mortgage or deed to secure a debt. The following facts appear: Prior to 23 June 1981 plaintiff owned a tract of land with improvements thereon in Buncombe County. The land was encumbered with a purchase money deed of trust duly recorded in the Buncombe County Registry. Plaintiff had sought a loan from defendant to cure a default in the promissory note secured by the deed of trust.

On 23 June 1981 plaintiff executed a deed to defendant conveying the lands in controversy. The deed contained an exception whereby the defendant grantee assumed and agreed to pay the balance due under the purchase money note secured by the deed of trust in the sum of $231,338.40. Revenue stamps were affixed to the deed in the sum of $120,000.00, indicating a purchase price of $120,000.00.

Simultaneously, there was executed and recorded an option and lease agreement which provided generally as follows: Defendant Robert C. Malt granted to Eagle's Nest the exclusive option to purchase the lands involved in this controversy at any time beginning 1 July 1982 and expiring 24 December 1982 for the sum of $412,000.00. On 24 December 1982 the option would lapse. During the period of the option, defendant had the responsibility for payment of ad valorem taxes and maintenance of fire, hazard, and liability insurance on the premises, together with the payment of principal and interest becoming due under the note secured by the deed of trust. Should defendant fail to make the payment, plaintiff could make such payments and apply the amounts paid as a reduction of the option purchase price. During the term of the option, defendant leased the premises to plaintiff for the sum of $200.00 per month.

On or about 29 September 1982 plaintiff notified defendant that it intended to exercise its option on or about 13 December 1982. Plaintiff did not tender its option payment and began this suit on 20 December 1982. In its complaint as originally filed, plaintiff alleged that prior to delivery of the deed to the premises it negotiated with defendant for a loan which defendant agreed to make and to accept as security legal title to the tract of land described in the deed, subject to plaintiff's right to repay the indebtedness and to have legal title to the real estate revested in the plaintiff. Defendant answered, admitting that he owned the real estate and executed the option and lease agreement; that he paid plaintiff $70,000.00 cash and assumed the balance due under the deed of trust in the sum of $231,448.50; and that he has paid the indebtedness due thereunder together with the property taxes and fulfilled the other requirements set out in the option and lease agreement. The time to exercise the option having expired, defendant prays that he be declared the fee simple owner.

Plaintiff amended its complaint to spell out specifically the loan amounts due defendant, the repayment of principal plus interest to be paid on or before 24 December 1982, and those items making up the $412,000.00 option price. To the amended complaint, plaintiff affixed a letter dated 5 June 1981 from its attorney addressed to the defendant and Herb Geller, president of Eagle's Nest, denoting the transaction as "Eagle's Nest, Inc. to Malt & Company Transaction," referring to documents enclosed

in connection with the alleged loan. Defendant answered, admitting that the parties discussed a loan, but otherwise denying a loan was ever consummated. Thereafter, defendant filed a motion for summary judgment. On the basis of the pleadings, affidavits, and a deposition, summary judgment was granted in favor of defendant. Plaintiff appealed.

*Carter and Kropelnicki, P.A., by Steven Kropelnicki, Jr. for plaintiff appellant.*

*Adams, Hendon, Carson & Crow, P.A., by James Gary Rowe for defendant appellee.*

HILL, Judge.

The sole issue is whether the trial court erred in granting defendant's motion for summary judgment. We find that summary judgment was properly granted.

Upon motion a summary judgment will be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." G.S. 1A-1, Rule 56(c). The party moving for summary judgment has the burden of establishing the absence of a triable issue of fact. His papers are meticulously scrutinized and all inferences are decided against him. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976); *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). In ruling on a motion for summary judgment, the court will not decide issues of fact. *Vassey v. Burch*, 301 N.C. 68, 269 S.E. 2d 137 (1980). "However, summary judgments should be looked upon with favor where no genuine issue of material fact is presented." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 524, 180 S.E. 2d 823, 830 (1971).

Applying these basic tenets to the case under review, we address plaintiff's contention that summary judgment was improperly granted. Plaintiff concedes that the deed, standing alone, establishes fee simple ownership in the defendant; and the materials filed by defendant, standing alone and uncontradicted, establish defendant's right to summary judgment. However, plaintiff contends that its opposing materials established a material fact in issue: whether defendant holds title to the real estate as an equitable mortgagee rather than as an owner in fee simple.

The term "equitable mortgage" is used as a catchall term to connote all of the transactions which, despite peculiarities of form or the appearance of a non-security deal, are given the effect of a mortgage when examined by a court with equitable powers. Thompson on Real Property, § 4711. Justice Devin, speaking for the court in *Ricks v. Batchelor*, 225 N.C. 8, 11, 33 S.E. 2d 68, 70 (1945), quoting *Ferguson v. Blanchard*, 220 N.C. 1, 16 S.E. 2d 414 (1941) and *O'Briant v. Lee*, 212 N.C. 793, 195 S.E. 15 (1938), states that:

> "when a debtor conveys land to a creditor by deed absolute in form and at the same time gives a note or otherwise obligates himself to pay the debt, and takes from the grantee an agreement to reconvey upon payment of the debt, the transaction is a mortgage. [citation omitted] But if the agreement leaves it entirely optional with the debtor whether he will pay the debt and redeem the land or not, and does not bind him to do so, or continue his obligation to pay, the relationship of mortgagor and mortgagee may not be held to continue unless the parties have so intended. . . . 'If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed to the land is to stand as security, the transaction is a mortgage; but if it is entirely optional with the grantor to pay the money and receive a reconveyance, he has not the rights of a mortgagor, but only the privilege of repurchasing the property.' "

Justice Devin went on to say that

> [w]hether any particular transaction amounts to a mortgage or an option of repurchase depends upon the real intention of the parties, as shown on the face of the writings, or by extrinsic evidence, and the distinction is whether the debt existing prior to the conveyance is still subsisting or has been satisfied by the conveyance. If the relation of debtor and creditor still continues, equity will regard the transaction as a method of securing a debt — and hence a mortgage.

*Ricks, supra* at 11, 33 S.E. 2d at 70. It being apparent the deed and option to repurchase are regular on their faces, we look to the extrinsic evidence offered by the parties to determine if there is any obligation to repay.

The letter dated 5 June 1981 from plaintiff's attorney to the defendant and Herb Geller, president of plaintiff corporation, contains the following:

Re: *Eagle's Nest, Inc., to Malt & Company Transaction*

Dear Herb:

I have enclosed several documents for the above transaction. To summarize their purpose, Malt intends to lend to Eagle's Nest the sum of $70,000 on June 15, 1981, and another $50,000 on April 15, 1982. Rather than effecting the standard loan and security arrangement, the parties have chosen to convey the security to the lender in fee simple; and the lender will simultaneously convey to the borrower an Option and Lease Agreement so that the borrower may recover the property upon liquidation of the loan and use the property during the term of the loan.

To achieve this, the following documents are required:

1. A general Warranty Deed from Eagle's Nest to Malt and Company. . . .

2. A Promissory Note and Deed of Trust evidencing Malt and Company's obligation to advance the further sum of $50,000 on April 15, 1982. . . .

3. An Option and Lease Agreement. . . .

4. A Memorandum of Option and Lease Agreement. . . .

The documents dated 15 June 1981 and executed 23 June 1981 are between Eagle's Nest and the defendant. The grantee is Robert C. Malt, who is an individual, and not Malt and Company. The letter refers to a note and deed of trust as a part of the agreement and appears nowhere in the record before us. It would seem that the letter refers to a transaction other than the one which is the subject of this lawsuit.

In fact, defendant in his affidavit acknowledges that Herb Geller, president of Eagle's Nest, approached defendant and sought a loan to be secured by a mortgage on certain real estate holdings of the corporation in North Carolina. Defendant advised Mr. Geller that he was not interested in loaning money to Eagle's Nest or in holding a second mortgage from said corporation. The

affidavit further reveals that Mr. Geller subsequently called and proposed to sell the property and that defendant give to Eagle's Nest an option to repurchase.

The affidavit of Ms. Vera Heflin reveals that she was present at a meeting between defendant and Mr. and Mrs. Herb Geller. At this meeting, the proposal for the purchase of real estate in Buncombe County, North Carolina, was discussed. Ms. Heflin took notes, and "[a]t no time did the parties discuss the loaning of money by Mr. Malt to Eagles Nest, Inc. in exchange for a mortgage, nor did the regulations include in any way treating the ongoing transaction as a loan."

If the moving party files papers, including testimonial affidavits, which show there is not a triable issue, the opposing party, pursuant to sections (e) and (f) of Rule 56, G.S. 1A-1, must file papers which show that there is a triable issue, or the moving party will be entitled to summary judgment. *Town of Atlantic Beach v. Young,* 58 N.C. App. 597, 293 S.E. 2d 821 (1982), *rev'd on other grounds,* 307 N.C. 422, 298 S.E. 2d 686 (1983); *Nye v. Lipton,* 50 N.C. App. 224, 273 S.E. 2d 313, *disc. rev. denied,* 302 N.C. 630, 280 S.E. 2d 441 (1981). Plaintiff attempts to rebut defendant's showing of no triable issue of fact with the affidavit of Norman Ferguson and the deposition of Scott Carter. The Ferguson affidavit is unsigned and unverified and cannot properly be considered by this court. G.S. 1A-1, Rule 56(e). The deposition of Mr. Carter contains reasons why defendant declined to treat the transaction as a loan, including capital gains tax advantages in lieu of ordinary interest income.

In addition, Mr. Carter testified there were no redemption rights other than an option to repurchase the property. In fact, Eagle's Nest gave notice of its intent to exercise its option to repurchase, but failed to do so. Mr. Carter secured an owner's title insurance policy insuring the interest of defendant as owner, not mortgagor. The policy showed no debt to defendant.

The record reflects no obligation on the part of Eagle's Nest to pay anything to defendant. We find no note or other evidence of debt which would require any payment to defendant. Eagle's Nest had a right to repurchase, not redeem, the property conveyed; but its rights were entirely optional. We conclude the deed conveyed the property to defendant, who owns the property free

of any claim by Eagle's Nest. Therefore, defendant was entitled to judgment as a matter of law.

The summary judgment appealed from is

Affirmed.

Judges BECTON and BRASWELL concur.