An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-834

Filed 4 February 2026

Wake County, No. 23CV010666-910

MARY GLADYS HARRIS, Executor of the Estate of Dennis Junior McLeod, Plaintiff,

v.

ANTHONY HAROLD MCLEOD, Defendant.

Appeal by Plaintiff from order entered 16 May 2024 by Judge Debra S. Sasser in Wake County District Court. Heard in the Court of Appeals 26 February 2025.

> *Davis Hartman & Wright, LLP, by Attorney R. Daniel Gibson, and Stam Law Firm, PLLC, by Attorney Paul Stam, for plaintiff-appellant.*

> *Batch, Poore & Williams, PC, by Attorney J. Patrick Williams, for defendant-appellee.*

STADING, Judge.

This case deals with a dispute over real property between Mary Gladys Harris ("Plaintiff")—the executor of Dennis Junior McLeod's estate—and Anthony Harold McLeod ("Defendant"). Plaintiff appeals from the trial court's order granting summary judgment in Defendant's favor. On appeal, Plaintiff argues the trial court erred in refusing to consider several affidavits filed in support of her motion for summary judgment. She also asserts the trial court erroneously denied her motion

for summary judgment and erroneously granted summary judgment for the non-movant. After careful consideration, we reverse and remand for further proceedings.

## I. Factual and Procedural Background

On 3 May 2023, Dennis Junior McLeod filed a complaint against Defendant—Mr. McLeod's nephew and Plaintiff's son—concerning a dispute over real property. The complaint alleged that on or about 17 March 2023, Mr. McLeod conveyed "all of his real estate" to Defendant by general warranty deed (the "Deed"), including Mr. McLeod's residence (the "Property") in Apex. In Mr. McLeod's view, he conveyed the Property subject to "an agreement by the parties that it was security for a debt which [he] would pay to Defendant at $200/month." Upon repaying the debt—in this case, owed taxes—Mr. McLeod believed that Defendant would reconvey the Property back to him.

Mr. McLeod's complaint maintained: "Defendant prepared the [D]eed"; "No excise tax stamps are shown on the [D]eed"; "the [P]roperty was in tax foreclosure" at the time of the conveyance; and "Defendant paid . . . the Wake County Tax Administrator . . . $3,295 which covered all property taxes due at the time." Thereafter, by and through counsel, Mr. McLeod tried to pay the entire debt to Defendant on 3 April 2023 and 17 April 2023 in exchange for Defendant deeding the

Property back to Mr. McLeod.[1]  Defendant "refused to reconvey the property" to Mr. McLeod.  On 13 July 2023, Mr. McLeod passed away.[2]

Plaintiff, as the executor of Mr. McLeod's estate, filed an amended complaint against Defendant on 3 August 2023, alleging that Defendant had paid just $3,295 for a piece of property that was worth far more.  The amended complaint also noted the poor physical, mental, and financial condition of Mr. McLeod at the time of the transaction, suggesting a degree of impropriety on Defendant's part:

> 1. . . . At the time of the act complained of [Mr. McLeod] was 89 years of age and in poor physical and mental condition. He had just been discharged from the hospital for stage 3 kidney failure and susceptibility to imminent heart attack or stroke. He was referred to hospice. [Mr. McLeod] has only a 4th or 5th grade education and did not read.
>
> . . . .
>
> 3. At the time of the conveyance [Mr. McLeod] was behind in his property tax. Defendant, or his associates, told [Mr. McLeod] that he was in tax foreclosure and he only had a certain number of days to pay or he would be put out of his home. Defendant only paid to the Wake County Tax Administrator the sum of $3,295 which covered all property taxes due at the time. . . . The tax value of the property at the time was $88,630 and, on information and belief, the fair market value was even greater. [Mr. McLeod] at that time was in financial distress. His only

---

[1] We note a minor discrepancy in the record.  Mr. McLeod's complaint and Plaintiff's amended complaint maintain that Defendant paid $3,295 in taxes on the Property.  However, the letters sent from Mr. McLeod's attorney state $3,209.  In any event, such discrepancy is immaterial to our analysis.

[2] Mr. McLeod's Last Will and Testament gave all "real and personal property . . . to my Executor who shall sell the same and divide the net proceeds as follows: ½ to my sister, MARY GLADYS HARRIS and ½ to my friend, BARBARA YAMASATA."  Although the will states the name "YAMASATA," the remainder of the record spells the name as Yamagata.

income was from Social Security at about $900/month.

. . . .

5. Although in form Exhibit A is a deed absolute, it was actually entered into as security for a debt. Provisions for redemption were omitted either through ignorance or mistake or fraud, or undue advantage by, or undue influence of the Defendant.

The amended complaint maintained that the parties executed the Deed "as security for a debt," and that the provisions "for redemption were omitted either through ignorance or mistake or fraud, or undue advantage by, or undue influence of the Defendant."

Defendant testified to a slightly different version of events in his deposition. Defendant stated that: he did not prepare the Deed for the subject property; he only provided a zero on the excise tax portion of the Deed because an employee at the deed office told him too; Mr. McLeod signed the Deed in the presence of a notary; although present, neither Defendant nor Plaintiff observed Mr. McLeod sign the Deed; Mr. McLeod "had all his faculties" when he signed the Deed; he did not know of the degree of Mr. McLeod's illness at the time of the conveyance; he only paid the taxes on the Property so that he could help Mr. McLeod "save his land"; he "wasn't trying to gain anything" from paying the taxes on the Property; he did not know the present value of the Property; he discussed paying the taxes on the Property with Plaintiff; and he was unaware of Mr. McLeod's level of education or inability to read.

Plaintiff moved for summary judgment on 8 February 2024. *See* N.C. Gen.

Stat. § 1A-1, Rule 56 (2023). In support of her motion, Plaintiff attached several affidavits: one by Plaintiff, and the other by Barbara Yamagata—a close friend of Mr. McLeod's. Plaintiff maintained: "There are no genuine issues as to any material fact. The Estate is entitled to judgment as a matter of law because [Mr. McLeod] and [Defendant] transacted an equitable mortgage entitling the Estate to redemption of the property upon repayment to [Defendant] . . . plus interest at the legal rate." In Defendant's response to the motion, he argued, "[t]here is a genuine issue of material fact in this matter, specifically whether Defendant holds title to the [property] as an equitable mortgagee or as an owner in fee simple." As such, he maintained that "Plaintiff's motion for summary judgment should be denied" since "Plaintiff has not established a prima facie case required for the court to find that an equitable mortgage exists in this matter[.]"

By order entered 16 May 2024, the trial court determined: "there [wa]s no genuine issue of material fact"; "Defendant [wa]s entitled to judgment as a matter of law in his favor"; and that "Plaintiff's [c]omplaint should be dismissed in its entirety." In reaching this conclusion, the trial court noted in a footnote, inter alia, that both Plaintiff's and Ms. Yamagata's affidavits failed to "attest" that they had "personal knowledge of the matters stated therein." The trial court therefore refused to consider the contents of either affidavit when rendering its decision. Plaintiff timely appealed from the trial court's order.

## II. Jurisdiction

This Court has jurisdiction over Plaintiff's appeal pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2023) ("From any final judgment of a district court in a civil action.").

## III. Analysis

Plaintiff asserts the trial court erroneously refused to consider two affidavits[3] that accompanied her motion for summary judgment because the affiants lacked personal knowledge. Plaintiff further argues the trial court erroneously granted summary judgment in Defendant's favor; instead, maintaining the trial court should have entered summary judgment in her favor.

"The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation omitted). In resolving a motion for summary judgment, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Forbis*, 361 N.C. at 524, 649 S.E.2d at 385 (quoting *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 528, 530 (1975)).

---

[3] We note that Plaintiff provided an additional affidavit in support of her motion for summary judgment—the affidavit of Christina Blackman. Plaintiff, however, does not argue that the trial court erroneously failed to consider Ms. Blackman's affidavit. We therefore do not consider whether the trial court erred in concluding that Ms. Blackman did not possess the requisite personal knowledge to attest to the matters contained in her affidavit.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. §1A-1, Rule 56(c). "The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact." *Forbis*, 361 N.C. at 524, 649 S.E.2d at 385. "A fact is material if it 'would constitute or would irrevocably establish any material element of a claim or defense.'" *Vizant Techs., LLC v. YRC Worldwide, Inc.*, 373 N.C. 549, 555, 838 S.E.2d 616, 619 (2020) (citation omitted). And "a genuine issue is one which can be maintained by substantial evidence." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971).

"The party moving for summary judgment bears the burden of bringing forth a forecast of evidence which tends to establish that there is no triable issue of material fact." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998). When "the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). An adverse party

> may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be

entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e). "The other methods for setting forth specific facts under Rule 56 are through depositions, answers to interrogatories, admissions on file, documentary materials, further affidavits, or oral testimony in some circumstances." *Strickland v. Doe*, 156 N.C. App. 292, 295, 577 S.E.2d 124, 128 (2003). However, "an unverified complaint is not an affidavit or other evidence." *Kiker v. Winfield*, 234 N.C. App. 363, 365, 759 S.E.2d 372, 373 (2014) (citation modified); *see also Rankin v. Food Lion*, 210 N.C. App. 213, 220, 706 S.E.2d 310, 315–16 (2011) (quoting *Tew v. Brown*, 135 N.C. App. 763, 767, 522 S.E.2d 127, 130 (1999)) (noting "the trial court may not consider an unverified pleading when ruling on a motion for summary judgment"). Relevant here, "summary judgment, when appropriate, may be rendered against the moving party." N.C. Gen. Stat. § 1A-1, Rule 56(c).

## A. Consideration of Affidavits

Plaintiff argues that the trial court erroneously failed to consider the affidavits that accompanied her motion for summary judgment on the basis of a lack of personal knowledge. We agree.

"Affidavits supporting a motion for summary judgment must 'be made on personal knowledge.'" *Hylton v. Koontz*, 138 N.C. App. 629, 634, 532 S.E.2d 252, 256 (2000) (citation modified); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

competent to testify to the matters stated therein."). While "a Rule 56 affidavit need not state specifically it is based on 'personal knowledge,' its content and context must show its material parts are founded on the affiant's personal knowledge." *Hylton*, 138 N.C. App. at 634, 532 S.E.2d at 256 (quoting *Middleton v. Myers*, 41 N.C. App. 543, 546, 255 S.E.2d 255, 256 (1979)) (citation modified). Phrased another way, Rule 56(e) affidavits comply with the personal knowledge requirement where the affidavits "can be interpreted so as to comply upon their faces." *Fuller v. Southland Corp.*, 57 N.C. App. 1, 5, 290 S.E.2d 754, 757 (1982).

That said, "our courts have held affirmations based on personal awareness, information and belief, and what the affiant thinks do not comply with the personal knowledge requirement of Rule 56(e)." *Hylton*, 138 N.C. App. at 634, 532 S.E.2d at 256 (citations omitted and modified). "What an affiant thinks are facts, unless it is a situation proper for opinion evidence, is not information made on personal knowledge proper for consideration on a summary judgment motion." *Fuller*, 57 N.C. App. at 6, 290 S.E.2d at 757 (citation omitted). "If an affidavit contains hearsay matters or statements not based on an affiant's personal knowledge, the court should not consider those portions of the affidavit." *Williamson v. Bullington*, 139 N.C. App. 571, 578, 534 S.E.2d 254, 258 (2000).

Here, Plaintiff's affidavit stated:

> 1. [Plaintiff] [is] the Executrix of the Estate of [Mr. McLeod] and I am his sister. I am the [P]laintiff in this proceeding. I make the affidavit on my own personal

knowledge. I am 79 years of age and competent to testify.

2. [Mr. McLeod] was in poor health on March 17, 2023. He had been hospitalized earlier that month and upon release was referred to hospice because of Stage 3 kidney disease and congestive heart failure. He signed the deed just a few days after being released from the hospital.

3. On [17 March] 2023, [Mr. McLeod] was in financial distress. He was behind on his property taxes and received only $900 per month in social security income.

4. [Mr. McLeod] was 90 years old on the date he signed the deed.

5. [Mr. McLeod] only had a 4th or 5th grade education. He could not read.

6. [Mr. McLeod] seemed distressed to me after he signed the deed. I went to see Mr. Stam three days after [Mr. McLeod] signed the deed, on Monday, March 20th. [Mr. McLeod] was incontinent and wearing a diaper when we went to Mr. Stam's office.

7. In my opinion, [Mr. McLeod's] home had a market value of no less than $135,000 on [17 March], 2023, and is worth over $200,000 today. [Mr. McLeod's] mobile home was very old. It had 1.058 acres of land and a big barn. I own my home less than half a mile away. My home is worth approximately $250,000 today and has less acreage (.7 acres).

8. [Mr. McLeod] continued to live in his home until shortly before his death. He was in the hospital for approximately a week before he died on July 13, 2023. I obtained the medical records from his last hospital stay. They are attached as Exhibit A.

Ms. Yamagata's affidavit stated:

1. I was a close friend of Dennis Junior McLeod for 12

years. I brought [Mr. McLeod] food, helped him with household chores and shopping, took him out to eat, visited every Saturday, and talked to him on the phone every day. I was a companion to him until he died. I make this affidavit on my own personal knowledge. I am 61 years of age and competent to testify in this action.

2. [Mr. McLeod] was 90 years old on the date he signed the deed.

3. [Mr. McLeod] only had a 4th or 5th-grade education and could not read.

4. On March 17, 2023, [Mr. McLeod] was in poor health and had been referred to hospice because of Stage 3 kidney disease and congestive heart failure. He had just been released from the hospital where he was treated for a kidney infection. At that time, [Mr. McLeod] was very sick, he was very old, moved slowly, and was incontinent.

5. [Mr. McLeod] was in financial distress on March 17, 2023. He was behind on his property taxes and only had income of $900 per month from social security.

6. [Mr. McLeod] continued to live in his home until shortly before his death, and he was in the hospital for approximately a week prior to his death on July 13, 2023.

In denying Plaintiff's motion for summary judgment, the trial court found that these affidavits "d[id] not attest that the [affiants] had personal knowledge of the matters stated therein."

Our review of Ms. Yamagata's affidavit leads us to hold that she possessed the requisite personal knowledge under Rule 56(e). Also, we hold the same for the majority of Plaintiff's affidavit. However, Plaintiff's statement that Mr. McLeod "seemed distressed" after signing the deed does not comply with Rule 56(e) since it is

merely based upon "information and belief, and what the affiant thinks." *Hylton*, 138 N.C. App. at 634, 532 S.E.2d at 256. Similarly, the medical records attached as an exhibit to Plaintiff's affidavit are improper given that Plaintiff herself would not be able to offer them into evidence. *See* N.C. Gen. Stat. § 1A-1, Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). The trial court thus possessed the latitude to not consider those portions of Plaintiff's affidavit. *Williamson*, 139 N.C. App. at 578, 534 S.E.2d at 258.

As to the other portions of the affidavits, for starters, although not required by our precedents, both affidavits expressly state they were made on the respective affiant's personal knowledge. *See Hylton*, 138 N.C. App. at 634, 532 S.E.2d at 256. Moreover, a review of the contents of each affidavit demonstrates that "its material parts are founded on the affiants['] personal knowledge." *Id.* (citation omitted and modified). The context of Plaintiff's affidavit indicates that she possessed personal knowledge since Plaintiff was Mr. McLeod's sister, and Plaintiff was serving as the executor for Mr. McLeod's estate at the time of the motion for summary judgment. Considering that context, the content contained within Plaintiff's affidavit is consistent with the personal knowledge a family member or estate administrator would possess, including matters pertaining to Mr. McLeod's health, finances, and affairs. *Cf. id.* at 635, 532 S.E.2d at 256. And contrary to Defendant's urging,

Plaintiff's statement as to the value of the Property is proper since Plaintiff had knowledge of the Property to form a basis for her lay opinion. *See, e.g., Finney v. Finney*, 225 N.C. App. 13, 16, 736 S.E.2d 639, 642 (2013) (quoting *Whitman v. Forbes*, 55 N.C. App. 706, 711, 286 S.E.2d 889, 892 (1982)) ("It is well established that '[l]ay opinions as to the value of the property are admissible if the witness can show that he has knowledge of the property and some basis for his opinion.'").

Additionally, the context of Ms. Yamagata's affidavit reflects that she possessed personal knowledge since she "was a close friend" of Mr. McLeod for twelve years, spent time with him each week, brought supplies to his home when needed, and "talked to him on the phone every day." In view of that context, the content therein is consistent with the personal knowledge a close friend would obtain. *Cf. id.* Thus, after disregarding the portions noted above, the face of the affidavits demonstrate compliance with Rule 56(e). *Fuller*, 57 N.C. App. at 5, 290 S.E.2d at 757. Accordingly, the trial court erred by refusing to consider these affidavits.[4]

## B. Genuine Issue of Material Fact

Plaintiff next argues the trial court erroneously granted summary judgment in Defendant's favor because uncontroverted evidence showed that: "Defendant

---

[4] Ordinarily, an appellant "bears the burden of showing not only that an error was committed below, but also that such error was prejudicial—meaning that there was a reasonable possibility that, but for the error, the outcome would have been different." *Faucette v. 6303 Carmel Rd., LLC*, 242 N.C. App. 267, 274, 775 S.E.2d 316, 323 (2015). However, since we conclude the trial court erroneously granted summary judgment for Defendant by virtue of resolving several genuine issues of material fact, we do not address whether Plaintiff suffered prejudice as a result of the trial court's failure to consider these affidavits in isolation. *See, e.g., Forbis*, 361 N.C. at 524, 649 S.E.2d at 385.

provided grossly inadequate consideration for the [P]roperty"; Mr. McLeod "was in distress"; Mr. McLeod "remained in possession of the [P]roperty"; and Mr. McLeod "was illiterate." We agree with Plaintiff, as well as Defendant's position in his response to the motion for summary judgment that "[t]here is a genuine issue of material fact in this matter, specifically whether Defendant holds title to the real estate . . . as an equitable mortgagee or as an owner in fee simple."

In Plaintiff's view, the trial court should have granted summary judgment in her favor, maintaining that grossly inadequate consideration—standing alone— warrants setting aside the Deed on the basis of fraud. *See Wall v. Ruffin*, 261 N.C. 720, 163 S.E.2d 116 (1964). Plaintiff also maintains the trial court should have granted summary judgment in her favor and imposed an equitable mortgage. *See Hardy v. Neville*, 261 N.C. 454, 135 S.E.2d 48 (1964). We disagree. For the reasons below, we hold that neither party is entitled to summary judgment.[5] The trial court

---

[5] Although Defendant pled the statute of frauds as an affirmative defense, he is not entitled to summary judgment on this basis at this phase of the proceedings. *See* N.C. Gen. Stat. § 22-2 (2023) ("All contracts to . . . convey any lands, . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized."); *see also Yeager v. Dobbins*, 252 N.C. 824, 826, 114 S.E.2d 820, 822 (1960) ("The statute of frauds is an affirmative defense and must be pleaded."); *see also Pickelsimer v. Pickelsimer*, 257 N.C. 696, 698, 127 S.E.2d 557, 559 (1962) ("It is settled law in North Carolina that an oral contract to convey or to devise real property is void by reason of the statute of frauds (G.S. 22-2)."). Notably, "an oral agreement to acquire legal title to land and thereafter reconvey to the grantor upon specified terms and conditions is within the statute of frauds . . . and is unenforceable *in the absence of fraud, mistake or undue influence*." *Dunn v. Dunn*, 24 N.C. App. 713, 716, 212 S.E.2d 407, 409 (1975) (emphasis added); *see also Rourk v. Brunswick Cnty.*, 46 N.C. App. 795, 796–97, 266 S.E.2d 401, 403 (1980) (emphasis added) ("It is well settled that *except in cases of fraud, mistake, or undue influence*, parol trusts or agreements will not be set up or engrafted in favor of the grantor upon a written deed conveying to the grantee the absolute title, and giving clear indication on its face that

therefore committed error by entering summary judgment in Defendant's favor.

We note that Plaintiff's reliance on *Wall* is misguided. The *Wall* decision provides that inadequate consideration, standing alone, does not justify setting aside a deed on the basis of fraud:

> The controlling principle established by our decisions is that inadequacy of consideration is a circumstance to be considered by the jury in connection with other relevant circumstances on an issue of fraud, but inadequacy of consideration standing alone will not justify setting aside a deed on the ground of fraud. However, if the inadequacy of consideration is so gross that it shows practically nothing was paid, it is sufficient to be submitted to the jury without other evidence.

261 N.C. at 723, 136 S.E.2d at 118. Plaintiff did not argue that she was entitled to summary judgment strictly on the basis of a lack of consideration before the trial court; instead, Plaintiff relied on the *Hardy* decision to establish that the conveyance in question merely granted Defendant an equitable mortgage. *See Rolan v. N.C. Dep't of Agric. & Consumer Servs.*, 233 N.C. App. 371, 381, 756 S.E.2d 788, 794–95 (2014) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)) ("An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount [on

---

such title was intended to pass."). At this stage, it is unclear whether Defendant acquired the Property as a result of fraud, undue influence, or mistake, which Plaintiff pled in her amended complaint. *See id.* Thus, even though there is no writing supporting the oral, contemporaneous agreement to reconvey the Property, the statute of frauds may be inapplicable to the instant case. At this stage in the proceedings, we are unable to determine whether the defense bars Plaintiff's ability to recover under an equitable mortgage theory.

appeal].”).  We therefore turn to Plaintiff's equitable mortgage argument made in reliance on *Hardy*.

"The term 'equitable mortgage' is used as a catchall term to connote all of the transactions which, despite peculiarities of form or the appearance of a non-security deal, are given the effect of a mortgage when examined by a court with equitable powers." *Eagle's Nest, Inc. v. Malt*, 70 N.C. App. 397, 400, 319 S.E.2d 685, 687 (1984) (citation omitted).  "An 'equitable mortgage' may be created when real property is conveyed together with an option to repurchase the property, where the intention of the parties at the time of the transaction was to secure a debt." *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 497, 524 S.E.2d 591, 594 (2000) (citing *McKinley v. Hinnant*, 242 N.C. 245, 251, 87 S.E.2d 568, 572–73 (1955)).  "Where, upon the face of a transaction it is doubtful whether the parties intended to make a mortgage or a conditional sale, courts of equity are inclined to consider it a mortgage, because, by means of conditional sales, oppression is frequently exercised over the needy." *O'Briant v. Lee*, 214 N.C. 723, 731–32, 200 S.E. 865, 871 (1939) (citation modified).

In *Eagle's Nest*, we noted the following principles concerning whether a party holds title to real property as an equitable mortgagee as opposed to in fee simple:

> When a debtor conveys land to a creditor by deed absolute in form and at the same time gives a note or otherwise obligates himself to pay the debt, and takes from the grantee an agreement to reconvey upon payment of the debt, the transaction is a mortgage. But if the agreement

- 16 -

leaves it entirely optional with the debtor whether he will pay the debt and redeem the land or not, and does not bind him to do so, or continue his obligation to pay, the relationship of mortgagor and mortgagee may not be held to continue unless the parties have so intended. . . . If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed to the land is to stand as security, the transaction is a mortgage; but if it is entirely optional with the grantor to pay the money and receive a reconveyance, he has not the rights of a mortgagor, but only the privilege of repurchasing the property.

. . . .

Whether any particular transaction amounts to a mortgage or an option of repurchase depends upon the real intention of the parties, as shown on the face of the writings, or by extrinsic evidence, and the distinction is whether the debt existing prior to the conveyance is still subsisting or has been satisfied by the conveyance. If the relation of debtor and creditor still continues, equity will regard the transaction as a method of securing a debt—and hence a mortgage.

70 N.C. App. at 400, 319 S.E.2d at 687–88 (cleaned up); *see also Ricks v. Batchelor*, 225 N.C. 8, 11, 33 S.E.2d 68, 70 (1945); *see also Ferguson v. Blanchard*, 220 N.C. 1, 7, 16 S.E.2d 414, 418 (1941).

And in *Hardy v. Neville*, our Supreme Court noted some material questions to evaluate whether a party holds title as an equitable mortgagee or in fee simple:

Our cases furnish ample guides pointing to the right answer. "If the relation of debtor and creditor still continues, equity will regard the transaction as a method of securing a debt -- and hence a mortgage." *Ricks v. Batchelor*, 225 N.C. 8, 33 S.E. 2d 68. A material question also is: does the relationship of debtor and creditor

- 17 -

> continue to exist after the conveyance? *Ferguson v. Blanchard*, 220 N.C. 1, 16 S.E. 2d 414. If the intent is to secure an obligation at the inception of the transaction it will be considered in equity a mortgage, and nothing else. *McKinley v. Hinnant*, 242 N.C. 444, 87 S.E.2d 568.
>
> Other questions material to decision in favor of holding a deed a mortgage are: The grantor is in distress at the time of the transaction. *O'Briant v. Lee*, 214 N.C. 723, 200 S.E. 865. The grantor is permitted to remain in possession. *Culbreth v. Hall*, 159 N.C. 588, 75 S.E. 1096. The price for reconveyance was not the value of the land but exactly the amount the grantees had advanced, plus interest, insurance and taxes. *Kemp v. Earp*, 42 N.C. 167.

261 N.C. at 457, 135 S.E.2d at 51. When determining "whether the transaction was merely a deed with option to repurchase or was a mortgage, the fact that the value of the property conveyed was much greater than the amount of the debt secured thereby, is some evidence that the parties intended that the deed operate as a mortgage." *Tomika Invs.*, 136 N.C. App. at 497, 524 S.E.2d at 594.

In *Hardy*, the plaintiffs executed a deed to J.P. Neville and his wife, the defendants, in exchange for financial assistance with an outstanding debt the plaintiffs owed in the amount of $8,736.70. 261 N.C. at 456, 135 S.E.2d at 50. At the time, the "plaintiffs were heavily indebted and threatened with the foreclosure of two deeds of trust on their farm." *Id.* In the plaintiffs' view, "the deed executed . . . was in fact security for a debt and in equity a mortgage." *Id.* The plaintiffs held this view in light of the fact that they contemporaneously executed the deed and the following contract:

> contemporaneous with the execution of the said deed
> referred to in the preceding paragraph [the defendants],
> entered into a contract in the nature of an option with the
> [plaintiffs], by the terms of which said [the defendants]
> agreed to sell and reconvey the real estate described in said
> deed for the purchase price of $ 8,736.70, plus interest at
> the rate of six per cent per annum, plus all taxes paid by
> the said [the defendants] on said real estate and all
> premiums of insurance advanced by [the defendants]."

*Id.* The plaintiffs thus contended the trial court erroneously failed to pass on its

motion for judgment on the pleadings. *Id.* at 458, 135 S.E.2d at 51.

On review, the North Carolina Supreme Court concluded that the trial court

should have entered judgment on the pleadings in favor of the plaintiffs, reasoning:

> The defendants' answer shows (1) the consideration for the
> deed was exactly the amount paid in discharge of the
> plaintiffs' debts; (2) the contract price for repurchase was
> the exact amount of that indebtedness, plus interest,
> insurance and taxes; (3) *the second contract was for the*
> *purpose of giving the plaintiffs additional time to redeem*;
> (4) in case of further default, provision was made for a sale,
> private by agreement, public otherwise; and the
> satisfaction of the debt from the proceeds. Thus the
> defendants' pleading makes out a clear case of debtor-
> creditor relationship between the Hardys and the Nevilles.
> The Nevilles held the legal title as security for their debt.
> The Hardys owned the equity of redemption. Both
> together, but neither alone, could sell and convey a good
> title to the purchaser.

*Id.* Accordingly, the Court held: the trial court "should have ruled as a matter of law

the plaintiffs and [the defendants] occupied the relationship of debtors and creditors";

"the deed dated February 2, 1961, was in equity a mortgage conveying the lands to

the grantees as security for the indebtedness due by the grantors"; and "subject to

this indebtedness, [the plaintiffs], being the owners of the equity of redemption, are entitled to have the deed cancelled upon the payment of that indebtedness." *Id.* at 458, 135 S.E.2d at 51–52 (citation modified).

In *Eagle's Nest*, this Court determined "whether [the] defendant h[eld] title to the real estate as an equitable mortgagee rather than as an owner in fee simple" in light of a conveyance made by the plaintiff. 70 N.C. App. at 399, 319 S.E.2d at 687. The plaintiff "sought a loan from [the] defendant to cure a default in [a] promissory note secured by [a] deed of trust." *Id.* The plaintiff later conveyed the property to the defendant by deed in exchange for repayment of its outstanding debts owed and simultaneously entered into an option contract to repurchase the property:

> The deed contained an exception whereby the defendant grantee assumed and agreed to pay the balance due under the purchase money note secured by the deed of trust in the sum of $ 231,338.40. Revenue stamps were affixed to the deed in the sum of $ 120,000.00, indicating a purchase price of $ 120,000.00.
>
> Simultaneously, there was executed and recorded an option and lease agreement which provided generally [that the defendant] granted to Eagle's Nest the exclusive option to purchase the lands involved in this controversy at any time beginning 1 July 1982 and expiring 24 December 1982 for the sum of $ 412,000.00. On 24 December 1982 the option would lapse.

*Id.* Sometime in December 1982, the plaintiff notified the defendant of its intent to exercise the option to purchase on or about 13 December 1982—eleven days before the expiration of the option. *Id.* However, the plaintiff "did not tender its option

payment," instead filing a complaint against the defendant on 20 December 1982. *Id.* Given that "the time to exercise the option [had] expired, [the] defendant pray[ed] that he be declared the fee simple owner." *Id.* (citation modified). The trial court ultimately entered summary judgment in the defendant's favor. *Id.*

On appeal to this Court, the plaintiff maintained that the trial court erroneously granted summary judgment for defendant since a genuine issue of material fact existed concerning whether an equitable mortgage was created. *Id.* On review, our Court determined that the plaintiff merely obtained an option to purchase as opposed to the right to redeem, and that the plaintiff failed to exercise the option within the requisite timeframe. *Id.* at 401–02, 319 S.E.2d at 688–89. It also determined that the plaintiff offered no evidence to rebut the defendant's motion. *Id.* at 402, 319 S.E.2d at 688–89. This Court thus concluded: "Eagle's Nest had a right to repurchase, not redeem, the property conveyed; but its rights were entirely optional"; "the deed conveyed the property to defendant, who owns the property free of any claim by Eagle's Nest"; and the "defendant was entitled to judgment as a matter of law." *Id.* at 402–03, 319 S.E.2d at 689.

Turning to the instant case, the trial court granted summary judgment for Defendant. Our review of the record, however, reveals that a genuine issue of material fact remains since it is unclear whether Defendant obtained the Property as an equitable mortgagee or in fee simple. *Forbis*, 361 N.C. at 524, 649 S.E.2d at 385.

Although there is no physical evidence that Mr. McLeod and Defendant

entered into a separate contract contemporaneously like the parties in *Hardy*, the attendant circumstances surrounding the conveyance are similar. 261 N.C. at 457, 135 S.E.2d at 51. In Defendant's answer to Plaintiff's motion for summary judgment, he maintained, "there was no discussion of any repayment of the tax debt by [Mr. McLeod] and no discussion of any terms of reconveyance to [Mr. McLeod]." Yet in his deposition, Defendant testified that he only paid the taxes on the Property so that he could help Mr. McLeod save his land, and that he "wasn't trying to gain anything from" helping Mr. McLeod. *See Kessing*, 278 N.C. at 535, 180 S.E.2d at 830 (citation omitted and modified) (noting that "if there is any question as to the credibility of witnesses or the weight of evidence, [ ] summary judgment should be denied[.]"). And approximately two-and-a-half weeks after the conveyance, on 3 April 2023, Mr. McLeod attempted to tender payment of the tax debt in full to Defendant in exchange for Defendant deeding the Property back to him. Moreover, Defendant allowed Mr. McLeod "to remain in possession" of the Property despite allegedly having transferred it to Defendant in fee simple. *Hardy*, 261 N.C. at 457, 135 S.E.2d at 51. In fact, in his deposition, Defendant stated: "[Mr. McLeod] wanted to die at home, and that's what I was trying to help him do. Nobody else would save his land." A genuine issue of material fact thus remains as to whether Defendant and Mr. McLeod established a debtor-creditor relationship, and whether they intended for the debtor-creditor relationship to continue after the conveyance. *Id.* And unlike *Eagle's Nest*, there is no assertion that Mr. McLeod's right to reclaim the property was subject to a time

constraint or "was entirely optional." 70 N.C. App. at 402–03, 319 S.E.2d at 689.

Additionally, at the time of the conveyance, both Plaintiff and Ms. Yamagata attested that Mr. McLeod possessed a "4th or 5th grade education," he was in financial distress, behind on his property taxes, eighty-nine years old, and in poor physical and mental health. Whereas Defendant maintained that at the time of the conveyance: he had no knowledge of the degree of Mr. McLeod's illness; he was unaware of Mr. McLeod's level of education or inability to read; and Mr. McLeod "had all his faculties." Thus, a genuine of issue of material fact also exists concerning whether Mr. McLeod was "in distress at the time of the transaction." *Hardy*, 261 N.C. at 457, 135 S.E.2d at 51; *O'Briant*, 214 N.C. at 729–30, 200 S.E. at 869.

Moreover, the amount Mr. McLeod sent Defendant to reclaim the Property thereafter is consistent with the debt total—$3,295—as opposed to its approximate market value. *Hardy*, 261 N.C. at 458, 135 S.E.2d at 51; *Tomika Invs.*, 136 N.C. App. at 497, 524 S.E.2d at 594 (noting "the fact that the value of the property conveyed was much greater than the amount of the debt secured thereby, is some evidence that the parties intended that the deed operate as a mortgage"). This attempted payment, in such a monetary amount, further establishes a genuine issue of material fact as to whether Mr. McLeod intended to transfer the Property to Defendant in fee simple. Had Mr. McLeod intended to convey his Property outright—as the trial court concluded—he likely would not have attempted to tender repayment of the debt to Defendant shortly thereafter on two separate occasions. Furthermore, Plaintiff's

affidavit attested to the following concerning the Property's value:

> In my opinion, [Mr. McLeod's] home had a market value of no less than $135,000 on March 17 2023, and is worth over $200,000 today. [Mr. McLeod's] mobile home was very old. It had 1.058 acres of land and a big barn. I own my home less than half a mile away. My home is worth approximately $250,000 today and has less acreage (.7 acres).

The trial court therefore erroneously resolved several genuine issues of material fact when awarding summary judgment in Defendant's favor. *See, e.g., Forbis*, 361 N.C. at 524, 649 S.E.2d at 385.

For all these reasons, we hold the trial court erroneously granted summary judgment for Defendant. As noted by our Supreme Court in *Koontz v. Winston-Salem*, "summary judgment provides a drastic remedy and should be cautiously used so that no one will be deprived of a trial on a genuine, disputed issue of fact." 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972) (citation modified).

## IV.    Conclusion

In sum, we conclude the trial court committed error by failing to consider several of the affidavits that accompanied Plaintiff's motion for summary judgment. Furthermore, we conclude the trial court erroneously granted summary judgment in Defendant's favor since a genuine issue of material fact exists. We therefore reverse the trial court's order and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges ARROWOOD and CARPENTER concur.

Report per Rule 30(e).